## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

EVELYN HARRIS, JOANN HARRIS,
DONALD LOSMAN,
H. BRADLEY HARRIS,
RICHARD MANTO, MELCHOR
ALFONSO, WAYNE MOODY, and
LARRY WEISSFELD,

                Plaintiffs

v.

JOERG HEIERLE, JAQUELINE PINHEIRO,
EIGER INVESTMENT GROUP,
INH INTERHOLDING,
FUTURES TRADING ACADEMY, INC., and
MARTIN HARTMANN,

                Defendants.

_____/

CASE NO.: **07-22279**

JURY TRIAL REQUESTED

CIV-SEITZ

[McALILEY]

FILED by _____ D.C.
INTAKE

AUG 3 0 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. • FT. LAUD.

## COMPLAINT

    1.    **Introduction.**  This case arises out of the Defendants' operating an illegal commodity pool, whereby the Defendants solicited investor funds via fraudulent and misleading misstatements and omissions of material fact.  The Plaintiffs were deceived and then defrauded.  The Plaintiffs' money is missing, deposited into and moved around in bank accounts from Miami to England, Switzerland, and Canada.  The erstwhile operator of the illegal commodity pool, Joerg Heierle, remains missing.  The National Futures Association ("NFA") has taken action against some of the Defendants, but to date, the chief culprit, Heierle remains at large, and the Plaintiffs' money—several hundred thousand dollars—remains unaccounted for.  The misdeeds identified in this Complaint violated several provisions of the Commodity Exchange Act and common-law

prohibitions against fraud.   Some of the Defendants actively participated in the wrongdoing while others aided and abetted it.

## JURISDICTION AND VENUE

2.     The Court possesses subject-matter jurisdiction over this case under 28 U.S.C.A. § 1331 because this case arises under 7 U.S.C. § 1a, *et seq.*, the Commodities Exchange Act ("CEA"). Because Plaintiffs' claim state common law claims arise from the same facts and circumstances as do Plaintiffs' CEA claims, this Court may, under 28 U.S.C. § 1367, exercise jurisdiction over the state law claims also.

3.     Venue is properly lodged in this Court, pursuant to 28 U.S.C. § 1391(b) and 7 U.S.C. § 25(c). At least one Plaintiff and one Defendant resides and can be found in this District. Moreover, a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## THE PARTIES

4.     Plaintiff Evelyn Harris resides in Aventura, Florida.   Evelyn Harris invested $115,000 with Defendants INH Interholding ("INH") and Heierle.

5.     Plaintiff JoAnn Harris resides in Clearwater, Florida. JoAnn Harris invested and lost at least $35,000 on July 7, 2006, with Defendants INH and Heierle by wire transfer to account number 1400108493928 at Natwest Primeline in the United Kingdom for Defendant Heierle.

6.      Plaintiff Donald Losman ("Losman") resides in Arlington, Virginia. Between December 8, 2005 and February 21, 2007, Losman invested and lost $132,000 with Defendants INH, Futures Trading Academy ("FTA"), and Heierle.  On Heierle's instructions, Losman made his checks payable to FTA, a Florida corporation and mailed the checks to the following address in Toronto: 15 McMurrich Street 1103, Toronto, ON M5R 3MG, Canada.

7.      Plaintiff H. Bradley Harris resides in Clearwater, Florida. H. Bradley Harris invested thousands of dollars with Defendants INH and Heierle.

8.      Plaintiff Richard Manto ("Manto") resides in the American Virgin Islands. Manto invested and lost $100,000 with Defendants INH and Heierle in or about April or May 2007.

9.      Plaintiff Melchor Alfonso ("Alfonso") resides in Aventura, Florida. Melchor Alfonso invested and lost his life savings of $10,000 in cash with Defendants INH, Heierle, and FTA on or about December 8, 2004.  When Alfonso gave Heierle the $10,000 (in two installments of $5,000 each), Heierle gave Alfonso a letter, attached hereto as Exhibit A, which was on FTA letterhead. Alfonso was never asked to sign a disclosure agreement.

10.     Plaintiff Wayne Moody ("Moody") resides in the United Kingdom.

11.     Plaintiff Larry Weissfeld ("Weissfeld") resides in Israel.

12.     Upon information and belief, Defendants Joerg Heierle ("Heierle") and Jaqueline Pinheiro ("Pinheiro"), Heierle's wife, reside at 430 North Shore Drive, Miami Beach, Florida.

13.     Upon information and belief, at all times material to the wrongs complained of in this Complaint, Defendant Eiger Investment Group ("Eiger") is a commodity trading advisor and, at all times material hereto, maintained its principal place of business at 15 McMurrich Street, Suite 1103, Toronto, Ontario, M5R 3 M6, Canada. Eiger's phone and website are no longer operational.  It is believed that Eiger has closed.

14.     Defendant  INH  Interholding  ("INH")  is  a  defunct,  unlicensed, unregistered commodity pool that, upon information and belief, maintained its principal place of business in this District at all times material hereto at 1236 Drexel Avenue, Suite #1, Miami Beach, Florida. At all times material hereto, it is believed that Defendant Heierle was the sole principal for INH.

15.     According to records on file with Florida's Secretary of State, Division of Corporations, Defendant Futures Trading Academy, Inc. ("FTA"), a Florida corporation, maintained its principal place of business in this District at 1236 Drexel Avenue, Suite #1, Miami Beach, Florida.  At all times material to the allegations in this Complaint, Defendant Heierle served as President and Director of FTA; at all times material to the allegations in this Complaint, Defendant Martin Hartmann ("Hartmann") served as a Director of FTA.

4

## FACTUAL ALLEGATIONS

16.     Defendant Heierle acted as an associated person for Eiger.

17.     On May 17, 2007, the National Futures Association ("NFA") announced that it had suspended Heierle from NFA membership because the NFA received information that Heierle, was acting illegally as a futures commission merchant and a commodity pool operator.  The NFA also announced on May 17, 2007, that it had "been unable to contact Heierle since April 27, 2007."

18.     On May 17, 2007, the NFA announced that it had suspended Eiger from NFA membership because the NFA received information that Heierle, the only principal and associated person with Eiger, was acting illegally as a futures commission merchant and a commodity pool operator.

19.     Defendant Heierle operated a commodity pool, INH , but was not licensed or registered with the NFA to do so. Consequently, Heierle operated an illegal commodity pool for at least three years.  In fact, Mr. Carl Wallin ("Wallin"), an Eiger employee, told the NFA that INH was not an actual company, but the name Heierle used for trading he conducted for friends and family.

20.     INH was effectively a front or ficticious name for FTA.  This is so because many Plaintiffs sent their checks payable not to INH, but to FTA.  Alternatively, INH served as FTA's alter ego, or visa versa.

21.     These monies were then diverted from INH or FTA and placed in Heierle personal account at York Business Associates dba Transact Futures. Yet Defendant Hartmann, in his capacity as an officer and director for FTA did nothing to prevent these

5

wrongs. Instead, Hartmann worked shoulder to shoulder with Heierle in the day-to-day operations of Eiger, INH, and FTA to defraud the Plaintiffs.

22.     Client monies were wired or deposited into accounts in the Florida, United Kingdom, Canada, and Switzerland.

23.     Hartmann actively aided Heierle in Heierle's illegal activities.   Upon information and belief, Hartman assisted Heierle in such matters as depositing Plaintiff's checks when, as with Plaintiff Losman, the checks were sent to Eiger's offices in Ontario.

24.     Eiger purportedly functioned as a commodities trading advisor.   Upon information and believe, Eiger counseled INH, FTA, and Heierle acted in concert in making trade executions, trading strategies, and how to hide the Plaintiffs' trading losses. Alternatively, Eiger, INH, FTA, and Heierle are the alter egos of one another.

25.     According to Wallin, Defendant Hartmann "was responsible for trade execution and system development and testing."  He did so to aid Heierle in Heierle's trading with client monies that had been deposited into Heierle's personal account at York.  In short, Hartmann acted to willfully aid, abet, counsel, induce, or procure violations of the Commodity Exchange Act.

26.     The commodity pool, INH, was illegal because Heierle was not licensed or registered to operate a commodity pool.  According the NFA's Enforcement Division, INH was never registered with the NFA. Had Heierle disclosed this unlawful status, no Plaintiff here would have invested any money with Heierle.

27.     INH and Heierle operated a website, for INH to lure investors with promises of staggering returns that purportedly far outstripped those delivered by other investment vehicles.

6

28.    INH and Heierle made a panoply of materially false and misleading statements or omissions, which in violation of the CEA, operated as a scheme to defraud investors and to fraudulently induce investors to sign up with INH. Those statements and omissions included, but were not limited to, the following:

a.  Heierle omitted to disclosed to any Plaintiff here that neither he nor INH was licensed or registered to operate a commodity pool;

b.  Heierle omitted to disclose that customer funds were deposited in his personal account at York, traded, and seriously depleted by huge losses—losses that Heierle concealed from investors;

c.  Systematically and continuously inflated net asset value ("NAV"); and

d.  INH was not a real company at all, but a sham designed to elicit funds from unsuspecting investors, like Plaintiffs here.

29.    As INH's alter ego, FTA also made these false and misleading statements. These false and misleading statements were reviewed and approved by Defendant Hartmann, who served as director for FTA and ran day-to-day operations of FTA, Eiger, and INH.

30.    Hartmann played an active role in procuring the publication of these misstatements and omissions by, among other things, helping to set up INH's website, which served as the medium to convey these false and misleading misstatements and omissions to Plaintiffs here.

7

31.    Each Plaintiff here could (and did) log onto INH's website to check the balance of their trading account(s). Heierle wildly inflated customer account balances to hide huge trading losses, to allow INH and Heierle to continue bleeding accounts for fees not legitimately earned, and to allow Heierle to continue to raise more money from new and existing customers.

32.    For example, Plaintiff Alfonso routinely logged onto INH's website to check the status of his life savings' investment.  As late as March 31, 2007, INH's website told Alfonso that his account balance stood at $24,380.15, up from $10,000 in December 2004, and up from $19,394.45 just three months before in December 2006. See Alfonso's Account March 31, 2007 Summary, attached hereto as Exhibit B.

33.    Upon information and belief, however, Alfonso's account was nowhere near $24,000; Alfonso had suffered large trading losses.  Plaintiffs so believe because, in trading for his own account with York, Heierle lost approximately $1 million.

34.    Contrary to what he represented on INH's website, Heierle could not do so well for INH clients and yet do so poorly for himself, especially where, as here, Heierle put INH clients' money into his personal account at York and traded.  Consequently, Heierle's personal trading misfortunes also fall upon Plaintiffs because Heierle was trading with Plaintiffs' money, not his own.

35.    Heierle knew these statements were false and misleading when he made them.  Later, Heierle would admit in an internet posting that "part of the invested funds had been lost in futures trading."  This indicates that there never were trading profits. Heierle said "invested funds," not trading profits.  This admission by Heierle shows that, in fact, the Defendants' scheme served only to continually deplete Plaintiffs' principal.

8

36.     Heierle's motivation for fabricating these fantastic returns is clear from INH's own website: INH took as fees twenty percent of purported trading profits, saying that "[t]he 'high-water-mark-principle applies.'" So, the more Heierle inflated and lied about trading profits, the more fees he could bleed from investors' accounts, and the more money he could continue to raise from new and existing customers.

37.     In the aggregate, Plaintiffs and others invested about $700,000 in the illegal commodities pool and, to date, have been unable to access their funds or reach Heierle.

38.     Defendant York contacted the NFA on April 27, 2007 and informed the NFA that, as of April 26, 2007, it held eleven customer accounts controlled by either Eiger or Heierle. Those accounts contained over $5 million, and Heierle has a personal account at York that, as of April 30, 2007, contained $95,000.

39.     Defendant Heierle is now in hiding and cannot be reached. According to NFA's Enforcement Division, Heierle is purportedly represented by Miami counsel Bruce Katzen of Kluger Peretz, but even Heierle's counsel is less than forthcoming about Heierle's whereabouts. Further, Katzen will neither confirm nor deny that his firm currently represents Heierle.

40.     The   Plaintiffs cannot access their funds, and Heierle has not communicated with the Plaintiffs, his clients, in months except, on August 15, 2007, to post the following self-serving denial *on a website devoted to finding Heierle* and recovering investor funds, http://catchjoergheierle.info:

Dear Investor

First of all I would like to express my regret for not being able to communicate or disclose any information with you at this point and time. I would like to clear a very important point, I have not stolen or run away with any client money, however part of the invested funds have been lost in futures trading. I have consulted an attorney to solve this situation in the best possible interest of my clients and we are working on it to get results as soon as possible. I will be in contact with you as soon as I have more details. Please apologize for the lack of communication.

41.     Heierle said nothing about his whereabouts or how any "Dear Investor" might contact him or the "attorney" that Heierle purportedly "consulted."

42.     Defendant Piheiro actively aided and abetted the fraud perpetrated by Heierle, FTA, INH, and Eiger. According to at least one e-mail that Heierle sent to Plaintiff Manto, Heierle instructed Manto to send Manto's funds to Heierle's home address, 430 North Shore Drive, Miami Beach, FL 33141, and to address said funds to either Heierle or Heierle's spouse, Defendant Pinheiro.

## COUNT I—ACTION FOR AN ACCOUNTING

43.     Plaintiffs reallege and reincorporate here paragraphs one through forty-two.

44.     Florida law entitles Plaintiffs to an accounting from Defendants Heierle, FTA, INH, Pinheiro, and Eiger.

45.     Each of these Defendants acted as fiduciaries for Plaintiffs.

46.     Plaintiffs entrusted to these Defendants Plaintiffs' funds and so entrusted those monies to these Defendants in these Defendants capacity as fiduciaries.

47.     These Defendants have breached their fiduciary duties to Plaintiffs by failing to communicate to Plaintiffs and by failing to provide Plaintiffs access to Plaintiffs' funds.

48.     Defendant Heierle has disappeared.   Upon information and belief, Plaintiffs believe that Heierle fled to Israel, where his father lives.

49.     Defendants Heierle, Eiger, INH, FTA, and Hartmann have moved funds out of the United States to banks in at least one other country, i.e., Canada.

50.     By all accounts, Defendant Heierle has commingled client funds with his own, which violated the Commodity Futures Trading Commission's Regulation 4.20 (c), 17 C.F.R. § 4.20 (c) (1998).

51.     For these reasons, Plaintiffs stand entitled to an accounting from Defendants Heierle, FTA, INH, and Eiger.

## COUNT II—COMMODITIES FRAUD

52.     The Commodities Exchange Act's anti-fraud provision, 7 U.S.C. § 6o, provides as follows:

> (1) It shall be unlawful for a commodity trading advisor, associated person of a commodity trading advisor, commodity pool operator, or associated person of a commodity pool operator by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly--
>
> (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or
>
> (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

53.     Plaintiffs reallege and reincorporate here paragraphs one through forty-two.

54.     Heierle was an associated person and principal for Eiger, a commodity trading advisor, and he held himself out as a lawful commodity pool operator for INH.

55.     Heierle and Eiger used the mails, the internet, and the telephone to employ the Defendants' device, scheme, and artifice to defraud Plaintiffs, and as detailed in this Complaint, he engaged in a course of business that defrauded and deceived the Plaintiffs.

56.     Plaintiffs reasonably believed and relied that the misstatements omissions made true when made.  That reliance and the falsity of the misstatements and misleading nature of the omissions caused Plaintiffs to invest, and ultimately, to lose their investments.

## COUNT III—AIDING & ABETTING COMMODITIES FRAUD

57.     The Commodity Exchange Act's aiding and abetting provision, 7 U.S.C. § 25(a)(1) provides as follows:

> (1) Any person (other than a registered entity or registered futures association) who violates this chapter or who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter shall be liable for actual damages resulting from one or more of the transactions referred to in subparagraphs (A) through (D) of this paragraph and caused by such violation to any other person--
>
> (A) who received trading advice from such person for a fee;
>
> (B) who made through such person any contract of sale of any commodity for future delivery (or option on such contract or any commodity); or who deposited with or paid to such person money, securities, or property (or incurred debt in lieu thereof) in connection with any order to make such contract;

(C) who purchased from or sold to such person or placed through such person an order for the purchase or sale of—

(i)     an option subject to section 6c of this title (other than an option purchased or sold on a registered entity or other board of trade);

(ii)    a contract subject to section 23 of this title; or

(iii)   an interest or participation in a commodity pool; or

(D) who purchased or sold a contract referred to in subparagraph (B) hereof if the violation constitutes a manipulation of the price of any such contract or the price of the commodity underlying such contract.

58.     Plaintiffs reallege and reincorporate here paragraphs one through forty-two.

59.     Defendants Hartmann, FTA, and INH are not registered entities or registered futures associations.  Nor are they registered or associate persons or principals.

60.     Defendants Hartman, FTA, and INH aided, abetted, counseled, induced, or procured Heierle's and Eiger's violations of the Commodity Exchange Act.

61.     Defendant Hartmann so acted when he reviewed and approved Heierle's false and misleading statements and omissions.

62.     Defendant Hartmann so acted when they helped Heierle procure and set up INH's website.

63.     Defendant Hartmann so acted when he, as Wallin told the NFA, "was responsible for trade execution and system development and testing."  He did so to aid Heierle in Heierle's trading with client monies that had been deposited into Heierle's personal account at York and to help Heierle and Eiger perpetrate commodities fraud upon the Plaintiffs here.

13

64.    Defendant FTA so acted when it received and deposited Plaintiffs' monies.

65.    Defendant Hartmann so acted when, in their capacities as FTA directors, they allowed Heierle to continue his fraudulent activities under FTA's banner.

66.    Defendant FTA, as INH's alter ego, so acted when it served as a vehicle for Heierle's fraud.

67.    As more fully detailed in all preceding paragraphs, Defendant INH did much to aid and abet Heierle's and Eiger's commodities fraud.

## COUNT IV—FRAUD IN THE INDUCEMENT

68.    Plaintiffs reallege and reincorporate here paragraphs one through forty-two.

69.    Defendants Heierle, FTA, and INH made the false statements of material fact detailed in all preceding paragraphs, and each of these Defendants knew these statements were false when made. Alternatively, each of these Defendants made the false statements of material fact alleged herein knowing that they lacked the knowledge of the truth or falsity of those statements.

70.    In particular, these Defendants falsely stated Heierle was lawfully operating a commodity pool when, in fact, Heierle was not. These Defendants led Plaintiffs to believe that INH was registered with the NFA when, in fact, the NFA had never heard of INH until it acted against Heierle and Eiger.

71.     These Defendants also falsely stated that INH was producing rates of return that far exceeded the market, and rates of return that far exceeded what legitimate operators of legitimate commodity pools were producing.  For example, Plaintiff Losman had substantial funds investment with Morgan Stanley in a managed futures account, but he moved those funds to INH when Morgan Stanley did not perform as well as the fictional rates of return for INH listed on INH's website.

72.     Defendants Heierle, FTA, and INH made the false statements of material fact detailed in all preceding paragraphs, intending that Plaintiffs rely on those false statements and invest money with Heierle, FTA, and INH.

73.     The Plaintiffs justifiably relied on these Defendants' misstatements, and their justifiable reliance led to Plaintiffs' suffering great financial harm.

### COUNT V—AIDING & ABETTING FRAUD IN THE INDUCEMENT

74.     Plaintiffs reallege and reincorporate here paragraphs one through forty-two.

75.     Defendants Eiger, Hartmann, aided and abetted fraud in the inducement perpetrated by Defendants Heierle, FTA, and INH.  They did so via the same actions whereby they aided and abetted commodities fraud.

## COUNT VI--CONVERSION

76.     Plaintiffs reallege and reincorporate here paragraphs one through forty-two.

77.     Plaintiffs entrusted their investment monies to Heierle, FTA, and INH.

78.     Plaintiffs had the right to demand that these Defendants immediately return to Plaintiffs' possession Plaintiffs' investment monies.

79.     Plaintiffs have tried to contact these Defendants to demand return of their investment monies.  Plaintiffs have been unable to contact any of these Defendants.

80.     All Defendants either jointly or severally have converted Plaintiffs' investment monies for their own personal use.

81.     For example, about one week before Defendant Heierle vanished, Plaintiff Evelyn Harris wire transferred $142,000 to Heierle's personal account at Natwest Prime in the United Kingdom. Those funds were never then transferred to any trading account. Rather, those funds simply vanished along with Heierle.

## VII—RELIEF REQUESTED

WHEREFORE, Plaintiffs request the following relief:

1.      A jury trial on all issues triable by jury;

2.      An order appointing a receiver, as requested in an accompanying motion;

3.      An order awarding compensatory and punitive damages; and

4.      An order awarding attorney's fees and costs and other such relief as the

         Court deems fair and just.

SONN & EREZ, PLC

Jeffrey R. Sonn, Esq.
Florida Bar No. 773514
jsonn@sonnerez.com
500 East Broward Blvd., Suite 1600
Fort Lauderdale, FL 33394
(954) 763-4700
(954) 763-1866 (facsimile)

17

# EXHIBIT A



# FUTURES TRADING ACADEMY, INC.

December 8ᵗʰ, 2004

Melchior Alfonso

Dear Melchior:

This letter will serve to confirm our agreement regarding your investment of $10,000.00 and purchase of 1.14953 units of Strategic Fund at the market price of 8699.17 as per December 8ᵗʰ, 2004. The value of your investment with us will fluctuate according to the price of the Strategic Fund, its current price is updated on our website www.interholding.net on a monthly basis.

Your units will change according to your deposits or withdrawals. You agree to the terms and conditions posted in our prospectus on www.interholding.net. Please sign a copy of this letter and return it to us.

Sincerely,
Futures Trading Academy, Inc.

Joerg Wegerle

# EXHIBIT B



**Interholding**

Client Login / Contact Us



### ACCOUNT STATEMENT

- Account summary
- Account history
- Help with account summary

For questions regarding your account please contact us at customerservice

## YOUR ACCOUNT SUMMARY
### as of 03/31/07

Account: **3220**

Balance: **$ 24,380.15**

**Current Year**



| Date | P&L | Dep/With | Balance |
|------|-----|----------|---------|
| 01/31/07 | 538.66 | - | 21,433.11 |
| 02/01/07 | - | 1,000.00 | 22,433.11 |
| 02/28/07 | 435.18 | - | 22,868.29 |
| 03/01/07 | - | 1,000.00 | 23,868.29 |
| 03/31/07 | 511.86 | - | 24,380.15 |
| **Total** | - | - | **24,380.15** |

**Previous Year**

| Date | P&L | Dep/With | Balance |
|------|-----|----------|---------|
| 01/31/06 | 242.03 | - | 12,489.08 |
| 02/28/06 | 259.43 | - | 12,748.51 |
| 03/31/06 | 185.33 | - | 12,933.84 |
| 04/30/06 | 343.00 | - | 13,276.84 |
| 05/31/06 | 434.76 | - | 13,711.60 |
| 06/30/06 | 517.63 | - | 14,229.23 |
| 07/31/06 | 64.60 | - | 14,293.83 |
| 08/31/06 | 209.83 | - | 14,503.66 |
| 09/05/06 | - | 1,000.00 | 15,503.66 |
| 09/30/06 | 212.87 | - | 15,716.53 |
| 10/02/06 | - | 1,000.00 | 16,716.53 |
| 10/31/06 | 303.68 | - | 17,020.21 |
| 11/01/06 | - | 1,000.00 | 18,020.21 |
| 11/30/06 | 222.44 | - | 18,242.65 |
| 12/31/06 | 151.80 | - | 19,394.45 |
| **Total** | **3,147.40** | - | **19,394.45** |

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

EVELYN HARRIS, JOANN HARRIS, H. BRADLEY HARRIS, DONALD LOSMAN, RICHARD MANTO, MELCHOR ALFONSO, WAYNE MOODY, and LARRY WEISSFELD,

### DEFENDANTS

JOERG HEIERLE, JAQUELINE PINHEIRO, EIGER INVESTMENT GROUP, INH INTERHOLDING, FUTURES TRADING ACADEMY, INC., and MARTIN HARTMANN

**(b)** County of Residence of First Listed Plaintiff   Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Dade
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Jeffrey R. Sonn, Esq.
Sonn & Erez
500 East Broward Blvd., Suite 1600
Fort Lauderdale, FL 33394
(954) 763.4700

Attorneys (If Known)

CIV - SEITZ
McALILEY

07-22279

FILED by __ D.C.
INTAKE
AUG 30 2007
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**(d)** Check County Where Action Arose: ☑ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

1:07CV 22279- Seitz-M/O
(a)/liley

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO      b) Related Cases ☐ YES ☑ NO

JUDGE _____   DOCKET NUMBER _____

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

7 U.S.C. Section 1, et seq., and Emergency Motion To Appoint Receiver for illegal commodity pool

LENGTH OF TRIAL via 10 days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE   8-29-07

FOR OFFICE USE ONLY
AMOUNT 350      RECEIPT # _____   IFP

540873